UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK A. PERELMAN,

                              Plaintiff,

              -against-

FEDERAL RESERVE DISTRICT BANK OF
NEW YORK,

                              Defendant.

Case No. 1:25-cv-02125 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Mark A. Perelman ("Plaintiff") applied for dozens of positions at Defendant

Federal Reserve Bank of New York ("Defendant" or the "New York Fed") between 2021 and

2024.  He was not hired for any of them, even though, he asserts, he met or exceeded the

minimum qualifications posted for each.  Concluding that he was passed over because he is

outside Defendant's "narrowly defined DEI profile," Plaintiff claims that Defendant

discriminated against him in violation of various federal, New York State, and New York City

laws.  He also seeks leave to proceed in this action anonymously, despite having litigated it

under his own name up to this point.  Defendant moves to dismiss the complaint and opposes

Plaintiff's motion to proceed anonymously.  For the following reasons, Defendant's motion to

dismiss is GRANTED, and Plaintiff's motion to proceed anonymously is DENIED.

## BACKGROUND

### I.    Procedural History

Plaintiff filed this employment discrimination action on March 11, 2025, alleging that

Defendant failed to hire him, and in doing so harassed him or created a hostile work

environment, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e *et seq.*; Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C.

§ 1981; the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12101 *et seq.*; the New York

State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City

Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.  See* Dkt. 1 at 3-5; *see*

*also* Dkt. 1-1 ("Complaint").

On August 5, 2025, Defendant moved to dismiss the Complaint.  *See* Dkt. 16.  Plaintiff

did not initially oppose that motion and (after the Court extended his time to do so, *see* Dkt. 19)

filed an amended complaint on August 25, 2025, reasserting the same claims and adding an

allegation that Defendant's conduct also violated the Rehabilitation Act of 1973, 29 U.S.C. § 701

*et seq.  See* Dkt. 20 at 4; *see generally* Dkt. 21 (the "Amended Complaint" or "AC").[1]  The

Amended Complaint also styles Plaintiff's "hostile work environment" claim as a "hostile hiring

environment" claim.  AC ¶ 3.  Based on the Amended Complaint, the Court denied Defendant's

then-pending motion to dismiss as moot.  *See* Dkt. 22.  On September 9, 2025, Defendant moved

to dismiss the Amended Complaint.  *See* Dkt. 24; Dkt. 25; Dkt. 26 ("Br.").  Plaintiff opposed the

motion on September 23, 2025, *see* Dkt. 29 ("Opp."), and Defendant filed a reply on September

30, 2025, *see* Dkt. 30 ("Reply").

Plaintiff filed the Complaint and the Amended Complaint using his own name.  *See*

*generally* Complaint; AC.  Nevertheless, on September 2, 2025, Plaintiff filed a motion seeking

leave to proceed under a pseudonym and requesting that the Court seal certain filings on the

docket that reflect his "protected characteristics."  *See* Dkt. 23 ("Pseudonym Mot.").  Defendant

opposed that motion on September 17, 2025.  *See* Dkt. 28 ("Pseudonym Opp.").

---

[1] Plaintiff filed two documents on August 25, 2025: a fillable form amended complaint, *see generally* Dkt. 20, and a "full complaint," *id.* at 5; *see generally* AC.  These are labeled on the docket as the "amended complaint" and the "second amended complaint," respectively.  *See* Dkts. 20-21.  The Court deemed the Amended Complaint to be the operative complaint.  *See* Dkt. 22.  Because they were filed simultaneously, the Court understands these documents as, together, amending the original complaint, rather than as successive amendments.

Accordingly, both the motion to dismiss and the pseudonym motion are fully briefed. The Court addresses each in turn.

## THE MOTION TO DISMISS

### I.    Factual Allegations

The Court draws the following facts from the Amended Complaint.  Plaintiff — who identifies as a "White, Jewish, gay male with [a] disability," AC ¶ 40(b) — has advanced degrees, "CFA certification," and more than "12 years of experience in finance and technology." AC ¶ 141.  His professional experience includes working in economic consulting, portfolio management, and financial and investment strategy, *id.* ¶¶ 142-44, as well as founding his own company, Capitao, where "he developed financial stability solutions, including a consumer savings and risk hedging system," *id.* ¶ 153.  Indeed, Plaintiff devotes seventeen pages of the Amended Complaint to describing his professional qualifications and accomplishments, including a detailed list of his "executive core qualifications" such as "external awareness," "ability to present plans and ideas convincingly to high-level officials," "leveraging diversity," "accountability," and "team building."  *See id.* at 52-69.

Believing that these credentials and experiences qualified him for employment with the New York Fed, Plaintiff "applied for dozens of roles" there between 2021 and 2024, "spanning risk management, fintech, policy, and supervisory functions."  *Id.* ¶ 2.  The AC includes a table listing each role Plaintiff applied for, but it does not include a job description for any of them. *Id.* ¶ 139.  He describes his applications as covering "a wide variety of roles within the company," including positions at the "fintech expert[]" and "executive[]" levels.  *Id.* ¶ 20. Defendant did not hire Plaintiff, or interview him, for any of those roles.  *Id.*  Notwithstanding his qualifications, he alleges, "he spoke with HR for only one role in January 2024, which

3

resulted in a referral but no interview." *Id.*  Moreover, Defendant never provided Plaintiff with a specific reason for its decisions not to interview or hire him.  *Id.*

Plaintiff concludes that "DEI hiring metrics drove Defendant's process rather than merit-based criteria." *Id.* ¶ 21.  Indeed, the New York Fed's policies include the use of "'[d]iverse slate' metrics embedded into hiring and the prioritization of underrepresented race, gender, and veteran status as 'central' to its mission, making DEI performance a mandatory factor in hiring and promotion decisions." *Id.* ¶ 32.  According to Plaintiff, these metrics fail to capture candidates like Plaintiff, who are "White male[s] . . . with intersectional traits." *Id.* ¶ 40; *see also id.* ¶ 31 ("Defendant has not tracked nor reported hiring of Jewish individuals despite the significant Jewish population in New York City and the exclusionary effects of DEI on Jews."). Instead, they "favor[] visible DEI traits and 'safe' majority hires (mainly White males who appear to be straight, Christian, and able-bodied) over merit.  Even where Plaintiff shared some DEI-favored traits (LBGT, disabled), his intersectional profile — particularly race and religion — placed him outside Defendant's preferred categories." *Id.* ¶ 4.  To Plaintiff, the fact that Defendant did not provide him with an explanation for its decisions not to hire him supports his conclusion that Defendant discriminated against him, and "suggest[s] the stated criteria were pretextual and masking identity-based gatekeeping." *Id.* ¶ 38.  In further support of his claims, Plaintiff provides statistics that, he asserts, demonstrate "[t]he decline in White male representation" in various roles at the New York Fed between 2011 and 2023, *id.* ¶ 88; *see also id.* ¶¶ 87-90, as well as in financial roles in the national workforce generally, *id.* ¶ 86.

Plaintiff also alleges that, at a certain point during his application process, he began to "disclose[] more private demographic information" about himself "to qualify for the Defendant's DEI initiatives," *id.* ¶ 29, yet he faced "continued exclusion" from the New York Fed's ranks, *id.* ¶ 57.  This exclusion caused Plaintiff "severe professional and personal harm, including

4

internalization of failure, . . . insomnia, . . . [and] delaying personal milestones, [such as] romantic relationships and starting a family." *Id.* ¶ 29.

## II.    Legal Standard

A plaintiff's "complaint may be dismissed to the extent that it 'fail[s] to state a claim on which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F. 3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)).  On a motion seeking such dismissal, the Court "accept[s] the material facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162 (2d Cir. 2025) (quoting *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023)). However, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where the plaintiff is *pro se*, his complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *accord Browne v. Arrow Sec.*, No. 24-cv-09788 (JLR), 2024 WL 5201653, at *1 (S.D.N.Y. Dec. 23, 2024).  However, even *pro se* pleadings "must state a plausible claim for relief" beyond "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Caraballo v. Dep't of Corr. City of New York*, No. 22-cv-00971 (JLR), 2022 WL 16555313, at *2 (S.D.N.Y. Oct. 31, 2022) (first quoting *Hogan*, 738 F.3d at 515; and then quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

5

### III.    Discussion

Defendant moves to dismiss the Amended Complaint for four reasons: (1) it is too vague to satisfy the pleading requirements of Federal Rule of Civil Procedure ("Rule") 8, Br. at 7-9; (2) its claims under Title VII and the ADA are untimely, *id.* at 9-11; (3) it fails to state a claim under any of the federal statutes it cites, *id.* at 12-24; and (4) its claims under the NYSHRL and NYCHRL are preempted by federal law, *id.* at 24-27.  Even assuming — without deciding — that the Amended Complaint meets Rule 8's requirements, that the Title VII and ADA claims are timely, and that the claims under state and city law are not preempted, the Court agrees that the Amended Complaint fails to state a claim under federal law.  For the reasons explained below, the Court dismisses the Amended Complaint in full on that basis and declines to exercise supplemental jurisdiction over Plaintiff's state and city claims.

#### A.    Failure to Hire

The federal statutes under which Plaintiff brings this suit all create a cause of action for discriminatory failure to hire.  *See* 42 U.S.C. § 2000e-2(a)(1) (Title VII provision that it is "an unlawful employment practice for an employer to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin"); 42 U.S.C. § 12112(a) (ADA provision prohibiting "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedure [and] the hiring . . . of employees"); 29 U.S.C. § 794(a) (Rehabilitation Act provision that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance"); 42 U.S.C. § 1981(a) (Section 1981 provision that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens"); *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 224 (2d Cir.

2004) (explaining that Section 1981(a) "thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment").

Furthermore, under each of these statutes, failure to hire is analyzed under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (Title VII and Section 1981); *Sista v. CDC Ixis N. Am.*, 445 F.3d 161, 169 (2d Cir. 2006) (ADA); *Hodges v. Holder*, 547 F. App'x 6, 7 (2d Cir. 2013) (summary order) (Rehabilitation Act).  That framework provides that "a plaintiff complaining of a discriminatory failure to hire [under Title VII or Section 1981] must first make out a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  Similarly, under the ADA and Rehabilitation Act, a plaintiff must allege that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-cv-06034 (JPO), 2020 WL 4547317, at *3 (S.D.N.Y. Aug. 6, 2020); *see also Sutherland v. N.Y. State Dep't of Law*, 216 F.3d 1073, 2020 WL 730413, at *3 (2d Cir. 2000) (unpublished table decision) ("[T]he Rehabilitation Act standards in employment discrimination cases are the same as the ADA standards."); *accord Pesce v. N.Y.C. Police Dep't.*, 159 F. Supp. 3d 448, 459 (S.D.N.Y. 2016).

*McDonnell Douglas*'s framework is intended "to 'progressively sharpen the inquiry into the elusive factual question of intentional discrimination'" as a case proceeds through the various stages of litigation.  *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (alteration adopted).  Thus, recognizing that discrimination plaintiffs often lack "direct evidence of discriminatory intent" at the pleading stage, the Second Circuit applies "reduced requirements" to the final prong of the prima facie case "in the initial phase of a Title VII litigation," such that a discrimination complaint "need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 311.  Even so, to survive a motion to dismiss, a plaintiff must "assert enough nonconclusory factual matter to nudge her claim across the line from conceivable to plausible to proceed."  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (alterations adopted) (quoting *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).  And "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn*, 795 F.3d at 311.  Even under this relaxed standard, then, Plaintiff must allege facts indicating that he was qualified for the positions he applied for at the New York Fed in order to adequately plead any of his federal claims here.  He has not done so.

To satisfy the qualification prong of a failure-to-hire claim under Title VII and the ADA (and thus under Section 1981 and the Rehabilitation Act), "a 'plaintiff must show only that he possessed the basic skills necessary for the performance of the job,' that is, that he satisfied 'the criteria the employer has specified for the position.'"  *Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, No. 23-cv-01932 (JLR), 2025 WL 1795378, at *8 (S.D.N.Y. June 30, 2025) (alterations adopted) (first quoting *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 53 (S.D.N.Y. 2019); and then quoting *Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 207

(E.D.N.Y. 2025)).  Accordingly, the plaintiff's pleadings "must . . . contain 'a description of the responsibilities or duties' of the position 'from which one could infer that the plaintiff was qualified for that position.'" *Molina v. John Jay Inst. for Justice & Opportunity*, No. 23-cv-01493 (DEH), 2024 WL 4276913, at *7 (S.D.N.Y. Sept. 24, 2024) (quoting *Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 328-29 (E.D.N.Y. 2002)).[2]

Here, however, Plaintiff provides no details about the duties, responsibilities, or minimum qualifications for the positions he applied for; instead, he simply lists the titles of those positions and the date on which he applied for each of them, *see* AC at 49-52, and he conclusorily asserts that he "meet[s] or exceed[s] the posted qualifications for" them all, *id.* ¶ 2. That is not enough.  Indeed, courts in this Circuit have routinely found failure-to-hire claims insufficiently pleaded for similar failings.  *See, e.g.*, *Lee v. Yang*, No. 21-cv-07934 (LGS), 2023 WL 419193, at *4 (S.D.N.Y. Jan. 26, 2023) (dismissing Title VII failure to hire claim where complaint "allege[d] that [p]laintiff applied and was qualified for an Executive Assistant position, but does not state how [p]laintiff was qualified"); *DiResta v. Biz2Credit Inc.*, No. 21-cv-00208 (LJL), 2021 WL 6052104, at *4 (S.D.N.Y. Dec. 20, 2021) (dismissing ADEA failure to hire claim where "[a]side from providing the name of the position at issue and stating that [plaintiff]'s resume reflected he had '25 years of experience,' the [a]mended [c]omplaint does not provide any information about what the position of associate corporate counsel required or

---

[2] The Court relies in equal measure on failure-to-hire cases and failure-to-promote cases, as "'[t]he case law does not distinguish between the legal standards for a failure to hire claim and a failure to promote claim[,]' [and] [t]he logic of the failure-to-promote case applies equally to failure to hire in any event." *Keshinover v. N.Y. State Office of Parks, Recreation & Historic Preservation*, No. 17-cv-04349 (CS), 2019 WL 5212235, at *9 n.7 (S.D.N.Y. Oct. 15, 2019) (quoting *O'Leary v. NY State Unified Court Sys.*, No. 05-cv-06722 (HB), 2007 WL 2244483, at *5 n.14 (S.D.N.Y. Aug. 6, 2007)).

about [plaintiff]'s skills that made him qualified to perform that job");[3] *Whigham-Williams v. Am. Broadcasting Co., Inc.*, No. 17-cv-06600 (AJN), 2018 WL 4042110, at *3 (S.D.N.Y. Aug. 22, 2018) (dismissing Title VII failure to hire claim where "[p]laintiff allege[d] that she has an Associate's degree, is studying law and theology, and is a member of two professional organizations" but "fail[ed] to explain how those credentials qualify her to be a co-anchor on Good Morning America"); *Riddle v. Citigroup*, No. 13-cv-06833 (AKH), 2014 WL 2767180, at *3 & n.3 (S.D.N.Y. May 29, 2014) (dismissing failure to hire claim under Title VII, ADA, and ADEA where plaintiff's "complaint does not include any factual details about the qualifications associated with the jobs she applied for," and where "listing job applications does not show the qualifications for those jobs"), *aff'd*, 640 F. App'x 77 (2d Cir. 2016) (summary order); *Stalling v. FINRA*, No. 21-cv-08390 (LTS), 2021 WL 5166406, at *3 (S.D.N.Y. Nov. 5, 2021) (dismissing Title VII and Section 1981 claims where plaintiff "does not allege any facts about the position for which he applied and whether he was qualified for the position"); *Smith v. Factory Direct Enters. LLC*, No. 18-cv-03463 (ADS) (AYS), 2019 WL 4221059, at *6-7 (E.D.N.Y. Sept. 5, 2019) (dismissing Title VII failure to promote claim where plaintiff "neither describes the job responsibilities for [the role] nor explains [her] skills applicable to the position"); *cf. Cruz v. Amazon.com Servs. LLC*, No. 21-cv-03092 (LDH) (VMS), 2023 WL 2652581, at *2 (E.D.N.Y. Mar. 27, 2023) (dismissing Title VII failure to promote claim where plaintiff "only generally allege[d] that she sought many promotions" and "had a perfect work rating," without describing the positions sought or providing factual allegations "[]sufficient to allow the [c]ourt to conclude that a perfect work rating alone rendered [her] qualified for the positions she sought"); *Cyrus v.*

---

[3] ADEA claims are also analyzed under the *McDonnell Douglas* framework and thus require a plaintiff to plead a prima facie case of discrimination (with lesser demands for the discriminatory intent prong). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106-07 (2d Cir. 2010); *accord Parron v. Herbert*, 768 F. App'x 75, 76 (2d Cir. 2019) (summary order).

10

*Lockheed Martin Corp.*, No. 22-cv-04115 (AMD) (TAM), 2024 WL 1072048, at *8 (E.D.N.Y. Mar. 12, 2024) (dismissing Section 1981 failure to promote claim where "the complaint [did not] include any facts about the necessary qualifications for the [sought] position" and therefore did not "plausibly plead[] the second element of the *prima facie* case").  In fact, one court in this District recently found, under similar circumstances, that this Plaintiff had failed to adequately allege his qualifications in a failure-to-hire action brought against another potential employer. *See Perelman v. Visa USA, Inc.*, No. 24-cv-09793 (AT) (KHP), 2026 WL 1013377, at *12 (S.D.N.Y. Jan. 20, 2026) ("Plaintiff has not pleaded what the minimum job qualifications were for any of the positions to which he applied or stated why he met the qualifications — all he has done is tried to compare his education and experience with the education and experience of some of the successful candidates that [he] cherry-picked from LinkedIn."), *report and recommendation adopted in part and modified in part on other grounds*, 2026 WL 696886 (S.D.N.Y. Mar. 12, 2026).[4]

In opposition to Defendant's motion to dismiss, Plaintiff asserts again that he "objectively exceeded the posted requirements for the positions at issue," and that his allegations of his "education, certifications, and relevant work experience suffice to plausibly allege [his] qualification."  Opp. at 12-13.  But, as in the Amended Complaint, he does not say what those requirements are and, thus, does not explain what makes his work experience and education relevant.  He provides examples of roles he applied to — "Liquidity Risk Supervising Examiner,

---

[4] Plaintiff alleges that "Defendant's application portal lists only job titles, without job descriptions," AC ¶ 114, and he appears to allege similarly that Defendant's job portal "does not preserve job descriptions" for the positions to which he previously applied, *id.* ¶ 139.  He concludes that such information is within Defendant's sole possession. *Id.* ¶¶ 114, 139.  But this does not alleviate Plaintiff's pleading burden.  At this stage, Plaintiff need not furnish copies of the job descriptions, or quote from them verbatim, but he must make factual allegations concerning the roles to which he applied so the Court can evaluate the sufficiency of his contention that he was qualified for them.  As discussed, he has failed to do so.

Specialized Risk Management Associate, and Product Owner – NY Innovation Center," *id.* at 12 — but does not describe what anyone holding such positions at the New York Fed actually does, let alone explain how his education and work experience align with those roles. *See id.* Nor does he point to any place in the Amended Complaint that provides that information. Even construing his pleadings to raise the strongest possible argument, the Court cannot credit Plaintiff's bare assertions that his experience and credentials qualify him for these roles in the absence of factual allegations concerning what they require. *See Chavis*, 618 F.3d at 170 ("Even in a *pro se* case, . . . [']threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009))); *Riddle*, 2014 WL 2767180, at *3 (dismissing failure to hire claim where "the [c]ourt is left to speculate" as to plaintiff's qualifications for specific roles in the absence of "any factual details about the qualifications associated with" them).

Plaintiff's citations to *Littlejohn*, 795 F.3d at 311, and *Swierkiewicz v. Sorema*, 534 U.S. 506, 511-12 (2002), are unavailing. *See* Opp. at 12-13. As discussed above, those cases merely acknowledge that a plaintiff will often have little direct evidence of discriminatory intent at the pleading stage and, thus, need not plead facts conclusively demonstrating that intent. *See Swierkiewicz*, 534 U.S. at 511-12 ("It . . . seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered."); *see also Littlejohn*, 795 F.3d at 311 (relying on *Swierkiewicz* and summarizing that, "[i]n other words, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent"). As *Littlejohn* itself explains, however, this relaxed standard as to the

12

final element of a prima facie discrimination case does not release Plaintiff from his burden to provide factual allegations supporting the remainder of that prima facie case, including that he was qualified for the positions for which Defendant failed to hire him.

Therefore, the Amended Complaint fails to plead that Plaintiff was qualified for any of the New York Fed roles to which he applied, and Plaintiff's failure-to-hire claims under Title VII, Section 1981, the ADA, and the Rehabilitation Act must be dismissed.

### B.    Hostile Hiring Environment

Plaintiff also claims that Defendant created a "hostile hiring environment" under these same federal statutes by failing to hire him. AC ¶ 3. The Amended Complaint cites to no authority indicating that such a claim exists, nor is the Court independently aware of any such authority. In asserting this claim, the Amended Complaint cites only to case law concerning hostile *work* environment. *See, e.g.*, *id.* ¶ 23. But that claim is unavailable to Plaintiff under the federal laws at issue here, because he was never employed by Defendant or otherwise part of its work environment. *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023) (explaining that a hostile work environment plaintiff must show "that the *workplace* is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment" (emphasis added) (internal quotation marks and citation omitted)).[5] That is fatal. *See Perelman*, 2026 WL 696886, at *8 ("[S]omeone who was never interviewed, let alone hired, cannot state a hostile work environment claim."); *see also*

---

[5] As with failure-to-hire claims, hostile work environment claims under Title VII, Section 1981, the ADA, and the Rehabilitation Act are all analyzed under the same standard. *See Banks*, 81 F.4th at 261-62 ("Hostile work environment claims brought under Title VII [and] § 1981 . . . are assessed using the same standard."); *Knope v. Garland*, No. 20-3274, 2021 WL 5183536, at *4 (2d Cir. Nov. 9, 2021) (summary order) (setting forth elements of Title VII hostile work environment and explaining that "[t]he elements of a hostile work environment claim are the same under the ADA, and thus, the Rehabilitation Act").

*Areu v. Fox News Network, LLC*, No. 20-cv-08678 (RA), 2021 WL 4124226, at *8 (S.D.N.Y. Sept. 9, 2021) ("[A]n employer logically cannot discriminate against a person in the 'conditions or privileges of employment if no employment relationship exists," because "[i]t is inherent in the definition of a hostile work environment that the person against whom the hostility is directed must be in an employment relationship with the employer." (first quoting *Wang v. Phx. Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2012); and then quoting *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999))); *Ruggiero v. Dynamic Elec. Sys. Inc.*, No. 12-cv-00100 (ILG), 2012 WL 3043102, at *8 (E.D.N.Y. July 25, 2012) (discussing Title VII and explaining that "every iteration of the elements of a hostile work environment claim has required an existing employer-employee relationship and a showing that the harassment substantively affected the plaintiff's working conditions").

In his opposition to Defendant's motion to dismiss, Plaintiff cites several cases purportedly supporting the premises that Title VII's protection of job applicants also "extends to [hostile work environment]" claims, Opp. at 10 & n.2, and that an employer's harassing conduct prior to an employee's start date may be relevant to a hostile work environment claim, *see id.* at 10 & n.3. None of those cases demonstrates the existence of a claim for hostile hiring environment (or so-called "hostile professional ostracism," *id.* at 11), and none undermines the Court's conclusion that a plaintiff cannot bring a hostile work environment claim against an employer for whom he has never worked in any capacity. *See, e.g.*, *Popat v. Levy*, 253 F. Supp. 3d 527, 531 (W.D.N.Y. 2017) (characterizing plaintiff's hostile work environment claim as "arising out of his employment"); *Morales-Evans v. Admin. Office of the Courts of N.J.*, 102 F. Supp. 2d 577, 587 (D.N.J. 2000) (finding "evidence of post-interview but pre-employment harassment" relevant to "the hostile work environment inquiry" for plaintiff who was ultimately employed by defendant); Opp. at 10 nn. 2-3 (citing both *Popat* and *Morales-Evans*). Therefore,

14

Plaintiff's hostile hiring environment claim — both as pleaded and construed liberally as a hostile work environment claim — is dismissed.

### C.    Disparate Impact and Disparate Treatment

Plaintiff also asserts a disparate impact claim against Defendant under Title VII.  AC ¶ 130.  Throughout the Amended Complaint, he also appears to characterize this claim as one for disparate treatment.  *See, e.g.*, *id.* ¶¶ 3, 6.  Construing the Amended Complaint liberally as asserting both claims, the Court finds Plaintiff has not adequately pleaded either claim.

#### 1.  *Disparate Impact*

A claim for disparate impact under Title VII requires that a plaintiff "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Mandala*, 975 F.3d at 207(quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012)).  The policy identified in the first prong must be "facially neutral." *Byrnie v. Town of Cromwell*, 243 F.3d 93, 111 (2d Cir. 2001) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)); *accord Doheny v. Int'l Bus. Mach., Corp.*, 714 F. Supp. 3d 342, 364 (S.D.N.Y. 2024).

Plaintiff's disparate impact claim fails because Plaintiff has not identified a facially neutral policy.  To the contrary, he alleges that Defendant's policies are intentionally discriminatory, inasmuch as they, for example, "specifically exclude[] non-veteran White men," AC ¶ 81, and "target candidates solely from underrepresented groups [in] violat[ion] [of] federal and state anti-discrimination laws," *id.* ¶ 84.  *See also, e.g.*, *id.* ¶ 32(a) (alleging that Defendant "[p]artner[ed] with search firms to identify only Black, Hispanic, female, or veteran candidates for open roles"); *id.* ¶ 40(b) (alleging that Defendant's "DEI policy . . . systematically exclud[ed] certain protected traits from diversity considerations").  In fact, at multiple points in the Amended Complaint, Plaintiff asserts that "the repeated rejection of Plaintiff's applications on

vague grounds — despite his objective qualifications — was not neutral." *Id.* ¶¶ 27, 37, 45, 55, 65, 73. These allegations defeat Plaintiff's disparate impact claim under Title VII. *See Attard v. City of New York*, 451 F. App'x 21, 24 (2d Cir. 2011) (summary order) (affirming dismissal of disparate treatment claim where plaintiff's identified policy of bringing disciplinary charges against only "older teachers" was "not a neutral practice, but rather intentional discrimination"); *Perelman*, 2026 WL 696886, at *9 (adopting report and recommendation's finding that Plaintiff failed to plead disparate impact where he identified policies that were not facially neutral, and "facial neutrality is required to plead a disparate impact claim"); *Ashmeade v. Amazon.com*, No. 23-cv-04331 (KMK), 2026 WL 880645, at *20 (S.D.N.Y. Mar. 31, 2026) (dismissing disparate impact claim under ADEA where "what [p]laintiff seeks to assert is intentional discrimination, not a facially neutral practice as required to sustain a disparate impact claim" (quoting *Bryant v. Greater New Haven Transit Dist.*, No. 12-cv-00071, 2014 WL 2993754, at *10 (D. Conn. July 2, 2014)));[6] *U.S. v. Salvation Army*, No. 96-cv-02415 (WHP), 1999 WL 756199, at *9 (S.D.N.Y. Sept. 24, 1999) (dismissing Fair Housing Act disparate impact claim premised on policy to deny rental applications from those receiving disability, as "such a policy would clearly not be facially neutral because it would treat all members of a protected class, *i.e.*, the disabled, differently from those who were not disabled");[7] *cf. Adorno v. Port Auth. of N.Y. & N.J.*, 258 F.R.D. 217, 234 (S.D.N.Y. 2009) (granting summary judgment to defendant on disparate impact claim where

---

[6] "The same standards govern disparate treatment claims arising under either Title VII or the ADEA." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 316 (1999); *accord Allen v. City of New York*, No. 24-2589, 2025 WL 3152726, at *2 (2d Cir. Nov. 12, 2025) (summary order).

[7] "We apply Title VII disparate impact analysis to FHA claims." *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 90 (2d Cir. 2000); *accord Ungar v. N.Y.C. Hous. Auth.*, 363 F. App'x 53, 55 (2d Cir. 2010) (summary order); *De La Fuente v. Sherry Netherland, Inc.*, No. 17-cv-04759 (PAE), 2018 WL 1597649, at *6 & n.8 (S.D.N.Y. Mar. 27, 2018).

16

evidence indicated policies were facially discriminatory).  Therefore, Plaintiff's disparate impact claim is dismissed.

### 2. *Disparate Treatment*

To the extent Plaintiff intended to assert a disparate treatment claim, *see, e.g.*, AC ¶ 50 ("Plaintiff alleges disparate treatment and the facts satisfy the *McDonnell Douglas* framework, including membership in protected classes; qualification for applied roles; adverse hiring outcomes; replacement by or selection of individuals outside protected classes; and possible pretext[.]"), that claim would also fail, because it follows the same analytical standard as Plaintiff's Title VII failure-to-hire claim.  *See Kalia v. City College*, No. 22-cv-07508 (VSB), 2025 WL 522544, at *7 (S.D.N.Y. Feb. 18, 2025) ("To survive a motion to dismiss a Title VII discrimination claim under a disparate treatment theory, [a plaintiff] must plausibly allege: '(1) that he is a member of a protected class, (2) that he was qualified for the position he sought, (3) that he suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation.'" (quoting *Littlejohn*, 795 F.3d at 311)).  Accordingly, the claims rise and fall together, and, for the reasons that Plaintiff's failure-to-hire theory fails, his disparate treatment theory also fails.  *See Branch v. State Univ.*, No. 18-cv-09516 (AT), 2020 WL 4057594, at *5 (S.D.N.Y. July 20, 2020) (denying motion to dismiss Title VII disparate treatment claim "[b]ecause [p]laintiff has adequately pleaded a prima facie case of discrimination under Title VII"), *aff'd*, 2024 WL 259692 (2d Cir. Jan. 24, 2024) (summary order); *Keaton v. Unique People Servs., Inc.*, No. 15-cv-05354 (PKC), 2018 WL 3708658, at *5 (S.D.N.Y. Aug. 3, 2018) ("Because [plaintiff] has failed to make out a prima facie case for discrimination, [her] disparate treatment claim under Title VII fails.").  Therefore, Plaintiff's disparate impact claim under Title VII, even construed as a disparate treatment claim, is dismissed.

### D.     NYSHRL and NYCHRL Claims

Based on the same facts as his federal claims, Plaintiff also asserts failure-to-hire discrimination claims against Defendant under the NYSHRL and NYCHRL.  *See* AC ¶¶ 131-32. The Court has jurisdiction over these remaining state law claims, if at all, through supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a) (granting district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").  But the Court need not exercise supplemental jurisdiction in all cases.  *See id.* § 1367(c)(3) (permitting district courts to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction").  Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)).  The Court finds this to be one such "usual case," and therefore declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.  *See, e.g.*, *Lee*, 2023 WL 419193, at *4-5 (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL claims after dismissing Title VII failure-to-hire claim for failure to plead qualifications for role sought).  Accordingly, the Court need not address the parties' arguments as to whether these claims are preempted by federal law.

### THE MOTION TO PROCEED ANONYMOUSLY

The Court next turns to Plaintiff's motion to proceed by pseudonym.  "A plaintiff seeking to proceed pseudonymously must rebut the presumption of openness and demonstrate that his

18

'need for anonymity' outweighs the 'countervailing interests in full disclosure,' including 'the public interest in disclosure and any prejudice to the defendant.'" *Doe v. Combs*, No. 25-986, 2026 WL 742650, at *1 (2d Cir. Mar. 17, 2026) (summary order) (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008)).  This presumption is outweighed only "[i]n narrow circumstances." *Doe v. Brown Harris Stevens Residential Mgmt., LLC*, 809 F. Supp. 3d 163, 165 (S.D.N.Y. 2025).  Courts weighing these competing interests consider the following ten non-exhaustive factors set forth by the Second Circuit in *Sealed Plaintiff*:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (alterations and omissions in original) (citations and internal quotation marks omitted).  "[A] district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Combs*, 2026 WL 742650, at *1 (quoting *Sealed Plaintiff*, 537 F.3d at 191 n.4).  The Court, having considered each factor, finds that they counsel against permitting Plaintiff to proceed by pseudonym.

As to the first factor (whether the litigation involves highly sensitive and personal subject matter), Plaintiff's employment discrimination claims are not, in and of themselves, highly

19

sensitive, and neither are most of his self-disclosed characteristics. *See Doe v. N.Y.C. Dep't of Educ.*, No. 23-cv-00198 (MKV), 2023 WL 5237520, at *3 (S.D.N.Y. Aug. 15, 2023) ("[C]laims of employment discrimination, harassment, and retaliation are not highly sensitive or personal in nature." (emphasis omitted)); *Doe v. Intel Corp.*, 786 F. Supp. 3d 576, 581 (S.D.N.Y. 2024) ("[M]ere membership in a protected class based on race, ethnicity, religion, or national origin is not typically considered 'highly sensitive[,]' [n]or is such an identity converted into a sensitive matter just because a plaintiff has filed a discrimination or retaliation lawsuit." (citation omitted)).  While Plaintiff has additionally disclosed his HIV status and sexuality, he provides no authority indicating that either warrants anonymity. *See, e.g.*, *Doe v. U.S. Dep't of Just. Drug Enf't Admin.*, No. 23-cv-09407 (MKV), 2023 WL 7165523, at *2 (S.D.N.Y. Oct. 31, 2023) (collecting cases, and explaining that "although district courts have recognized that 'claims involving sexual orientation' *may* be of a 'highly sensitive or personal nature,' plaintiffs alleging discrimination on the basis of sexual orientation in this Circuit have long proceeded in their own names" (citation omitted) (quoting *Michael v. Bloomberg L.P.*, No. 14-cv-02657 (TPG), 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015))).  Accordingly, the first factor appears to weigh against anonymity; even if Plaintiff's HIV status and sexuality did support anonymity, however, this first factor "is not dispositive." *Sebastian v. Doe*, No. 25-cv-00911 (JAV), 2025 WL 856242, at *2 (S.D.N.Y. Mar. 19, 2025).

As to the second and third factors (risk of retaliatory physical, mental, or other harms to Plaintiff or non-parties), Plaintiff offers only speculation that, if his identity remains disclosed, he might face retaliation from "groups hostile to his protected characteristics" given "the current climate of targeted harassment toward individuals associated with DEI-related litigation." Pseudonym Mot. at 2.  That is insufficient to justify anonymity. *See Brown Harris Stevens*, 809 F. Supp. 3d at 167-68 (finding that second and third factor weigh against anonymity where

20

"[p]laintiff does not offer direct evidence of harm and only speculates about potential retaliation"); *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94-95 (S.D.N.Y. 2020) ("[P]laintiffs must base their allegations . . . on more than just mere speculation." (quoting *Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019))).  Nor does Plaintiff contend that the continued disclosure of his identity poses any retaliatory risk to innocent non-parties.  Plaintiff does argue that "[d]isclosure could lead to discrimination in employment and social settings and exacerbate mental health conditions."  Pseudonym Mot. at 2.  However, "[e]vidence of embarrassment, social stigmatization, and economic harm are insufficient to proceed anonymously . . . and 'courts have consistently rejected anonymity requests predicated on harm to a party's reputational or economic interests.'"  *Doe v. Townes*, No. 19-cv-08034 (ALC) (OTW), 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) (quoting *Abdel-Razeq v. Alvarez & Marsal, Inc.*, No. 14-cv-05601 (HBP), 2015 WL 7017431, at *4 (S.D.N.Y. Nov. 12, 2015)); *accord Doe v. Ehrhard*, No. 25-cv-05724 (JHR) (RWL), 2025 WL 3465593, at *6 (S.D.N.Y. Dec. 1, 2025), *report and recommendation adopted sub nom.*, *Johar v. Ehrhard*, 2026 WL 209810 (S.D.N.Y. Jan. 27, 2026).  Therefore, the second and third factors weigh against anonymity.

As to the fourth factor (Plaintiff's particular vulnerability to disclosure), Plaintiff is an adult and was an adult during the events alleged in the Amended Complaint.  Accordingly, the fourth factor weighs against anonymity.  *See Doe v. Telemundo Network Grp. LLC*, No. 22-cv-07665 (JPC), 2023 WL 6259390, at *5 (S.D.N.Y. Sept. 26, 2023) ("If a plaintiff is not a child, [the fourth] factor weighs against a finding for anonymity." (quoting *Rapp v. Fowler*, 537 F. Supp. 3d 521, 530 (S.D.N.Y. 2021))).

As to the fifth factor (whether the action challenges governmental or private parties' actions), this is an action against a private defendant, and "[c]ourts are loathe to grant a motion to proceed anonymously against private parties." *Doe v. Sumitomo Fin. & Leasing, Ltd.*, No. 25-

cv-04549 (MKV), 2025 WL 2171702, at *3 (S.D.N.Y. July 31, 2025).  This factor, thus, weighs against anonymity.

As to the seventh factor (whether Plaintiff has maintained confidentiality so far), Plaintiff has already disclosed his identity to Defendant and on the docket.  Accordingly, this factor weighs against anonymity.  *See Perelman v. Visa USA, Inc.*, No. 24-cv-09793 (JHR) (KHP), 2025 WL 2962006, at *2 (S.D.N.Y. Oct. 20, 2025) (finding that the seventh factor weighed against anonymity because "[i]nsofar as Plaintiff filed this case in his own name and only after a year sought to proceed anonymously, his identity is already public.  The cat is out of the bag").

As to the eighth and ninth factors (whether the public's interest is furthered by disclosure or atypically weak), "[a]s a rule, 'lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them.  Among those facts is the identity of the parties.'" *Doe v. D'Onofrio Gen. Contractors Corp.*, No. 26-cv-02860 (JLR), 2026 WL 1146030, at *5 (S.D.N.Y. Apr. 28, 2026) (quoting *Weinstein*, 484 F. Supp. 3d at 97).  Plaintiff argues that the public could still "evaluate the merits" of this case "without revealing Plaintiff's name," Pseudonym Mot. at 2, but the inquiry is broader than that.  As Defendant notes — and as one court in this district ruled in addressing Plaintiff's motion to proceed anonymously in a case against another defendant involving similar employment discrimination claims — the public's interest includes "be[ing] able to learn of [Plaintiff]'s multiple, copycat actions." *Perelman*, 2025 WL 2962006, at *2; *see* Pseudonym Opp. at 9.  Moreover, Plaintiff's claims are factual, not purely legal, and therefore the public's interest in this matter is not atypically weak.  *See Doe v. Fashion Inst. of Tech.*, No. 25-cv-00950 (JPC), 2025 WL 1000927, at *5 (S.D.N.Y. Apr. 3, 2025) (finding public interest not atypically weak where "[p]laintiff advances discrimination claims that involve . . . disparate treatment of Jewish students at colleges")).  Therefore, the eighth and ninth factors weigh against anonymity.

22

Finally, inasmuch as the Court is presently dismissing Plaintiff's case, the Court finds the sixth factor (prejudice to Defendants by permitting Plaintiff to "press his claims anonymously," *Sealed Plaintiff*, 537 F.3d at 190) largely irrelevant. The same is true of the tenth factor, which concerns alternate mechanisms for protecting sensitive aspects of Plaintiff's identity and is typically addressed by a protective order covering information exchanged in discovery. *See Perelman*, 2025 WL 2962006, at *2 ("In this case, the [c]ourt can issue a protective order to protect personally sensitive medical and other information that is exchanged in discovery — something done in most employment discrimination cases.").

In sum, of all the *Sealed Plaintiff* factors, only the first may potentially weigh in favor of anonymity, and, as the Court has explained, that is not enough. Accordingly, "Plaintiff has not sufficiently demonstrated that his 'interest in anonymity' outweighs the prejudice to Defendants and 'the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Sebastian*, 2025 WL 856242, at *2 (first quoting *Rapp*, 537 F. Supp. 3d at 528; and then quoting *Doe v. Freydin*, No. 21-cv-08371 (NRB), 2021 WL 4991731, at *4 (S.D.N.Y. Oct. 27, 2021)). Thus, his motion to proceed anonymously is denied, and the action shall remain on the public docket in Plaintiff's name.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss is GRANTED, and

Plaintiff's motion to proceed anonymously is DENIED.  The Clerk of Court is respectfully

directed to terminate the motions at Dkts. 23 and 24, and to CLOSE this case.

Dated:  June 3, 2026
         New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge